UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cr-00082-TWP-MJD-16 |
| | ) | |
| SEAN DEVONISH | ) | |
| Defendant. | ) | |

ORDER ON DEFENDANT'S MOTION TO MODIFY, AND
FINDINGS OF FACT AND CONCLUSIONS OF LAW ON FORFEITURE

This matter is before the Court on Defendant's Request to Modify Forfeiture (Filing No. 979), and the Government's Motion for Preliminary Order of Forfeiture (Filing No. 1126). On February 7, 2024, an evidentiary hearing was held on the parties' Motions. The Government appeared by Bradley A. Blackington and Kelsey Massa, Assistant United States Attorneys. Defendant Sean Devonish ("Devonish") appeared in person, in custody, and by CJA counsel Valerie Horvath. Matthew Holbrook and Eric Sills attended as agents for the Government. David Moxley was the Court Reporter. Following the hearing, the Court granted the Government's Motion (Filing No. 1139). Now, the Court **grants in part and denies in part** the Defendant's Motion and states its findings of fact and conclusions of law.

## I.     FINDINGS OF FACT

### A.     Procedural Background

On April 18, 2023, Devonish was charged by Superseding Indictment with Count One: Conspiracy to Distribute Controlled Substances; Counts Eight and Twenty-Seven: Possession of Fentanyl with Intent to Distribute; and Count Twenty: Possession of Methamphetamine with Intent to Distribute (Filing No. 503). The conspiracy count charges Devonish with being a member of a

drug trafficking conspiracy that began in 2020 and continued until his arrest in 2022. The Superseding Indictment contained notice of the Government's intention to forfeit any and all proceeds of the charged crime and any and all property. *Id.* at 30-31. On August 22, 2023, Devonish pled guilty to Counts One, Eight, Twenty, and Twenty-Seven of the Superseding Indictment (Filing No. 700). On August 24, 2023, the Government filed a Motion for Preliminary Order of Forfeiture requesting the Court enter a Preliminary Order of Forfeiture forfeiting Devonish's interest in the following property:

> (1) one .357 caliber Taurus revolver, bearing serial number ABL140169, seized from 12351 Gann Court in Indianapolis on July 21, 2022; (2) one 9 millimeter SCCY CPX-2 firearm, bearing serial number 724294, seized from 12351 Gann Court on July 21, 2022; (3) one American Defense Model UIC 5.56 Assault Rifle, no serial number listed, seized from 12351 Gann Court on July 21, 2022; (4) one 5.7 x 28 millimeter Ruger Model 57 firearm, bearing serial number 641-28945, seized from 12351 Gann Court on July 21, 2022; (5) one 12 gauge Maverick Arms Model 88 shotgun, bearing serial number MV14835A, seized from 12351 Gann Court on July 21, 2022; (6) one 2020 Dodge Hellcat, bearing VIN 2C3CDXL90LH148724, seized from 12351 Gann Court on July 21, 2022; (7) $51,046.92 in currency, seized from 12351 Gann Court on July 21, 2022; (8) one .38 caliber Smith & Wesson handgun, bearing serial number C160697, seized from 5543 East 41st Street in Indianapolis on July 21, 2022; (9) one .40 caliber Springfield Armory Model XD Mod2, bearing serial number GM138900, seized from 5543 East 41st Street in Indianapolis on July 21, 2022; and (10) any and all ammunition seized from 12351 Gann Court and 5543 East 41st Street on July 21, 2022; and (11) $107,211.36 seized from Financial Center First Credit Union Checking and Savings Account #441531.

(Filing No. 705 at 2-3.) The Court granted the preliminary order on August 30, 2023 (Filing No. No. 712).

On November 28, 2023, Defendant's Request to Modify Forfeiture was filed, in which Devonish noted that he does not dispute forfeiture of the cash seized from his residence as that sum was directly related to his involvement in this conspiracy, or his interest in the firearms. (Filing No. 979.) However, Devonish asserted the Government cannot carry its burden as to the forfeiture of the $107,211.36 from his bank account and the 2020 Dodge Charger Hellcat

automobile ("the Hellcat") and asked the Court to modify its forfeiture order to exclude the $107,211.36 seized from his savings account and his Hellcat.  *Id*.

Because Devonish has challenged the forfeiture of the money contained in the Financial Center First Credit Union account and the Hellcat, the Government filed an amended Motion for Preliminary Order of forfeiture on January 13, 2024, stating that the Government does not seek the preliminary forfeiture of the $107,211.36 seized from Financial Center First Credit Union checking and savings account #441531 or the Hellcat, and the forfeiture of these items can be resolved at an evidentiary hearing concerning forfeiture of these two items. (Filing No. 1126.)

**B.**     **Factual Findings**

From late 2019 through July 21, 2022, Keith Jones ("Jones") directed the activities of a drug trafficking organization operating in Indianapolis, Indiana that distributed methamphetamine, fentanyl, and cocaine.  (Filing No. 693.)  Devonish distributed all three substances for Jones.  *Id*. Several of Devonish's drug transactions with Jones are recorded on the close circuit television ("CCTV") camera located in Jones' kitchen in June and July of 2022.  During the two months when the CCTV camera was in Jones' kitchen, Devonish was Jones' number one customer.

On June 7, 2022, Jones fronted approximately 75 grams of fentanyl to Devonish for further distribution at 6160 North Rural Street, Apartment 1218, Indianapolis.  *Id*.  On June 16, 2022, Jones and Devonish engaged in a FaceTime conversation with Kevin Backstrom ("Backstrom"), during which they ordered 100 pounds of methamphetamine from Backstrom to be provided in several separate shipments.  Jones received shipments of methamphetamine from Backstrom on June 18, 2022 (25 pounds), June 21, 2022 (25 pounds), June 22, 2022 (25 pounds), and June 27, 2022 (20 pounds).  *Id*. at 1-2.  On June 17, 2022, Jones fronted 500 grams of fentanyl to Devonish for redistribution.  The transaction occurred at Jones' Rural Street apartment.  *Id*. at 2.  Later in the

day, Devonish returned to this apartment and met with Jones' twelve-year old daughter and obtained 250 grams of fentanyl.  The transaction was brokered between Jones and Devonish by Jones' twelve-year old daughter.  Still later in the day, Devonish returned to the apartment and paid Jones $10,000 for previously fronted controlled substances.  *Id*.  On July 5, 2022, Jones fronted 250 grams of fentanyl to Devonish at 6160 North Rural Street, Apartment 1218.  *Id*.  On July 15, 2022, Devonish paid Jones $18,000 for previously fronted controlled substances.  *Id*.  On July 19, 2022, Jones fronted 14 pounds of actual methamphetamine to Devonish at 6160 North Rural Street, Apartment 1218.  Jones agreed to deliver an additional 6 pounds of methamphetamine to Devonish later in the day.  *Id*.

On July 21, 2022, agents from the Drug Enforcement Administration ("DEA") executed a federal search warrant at Devonish's residence, located at 12351 Gann Court, in Indianapolis. During the search, officers recovered numerous firearms, drugs and $27,684.92 in US currency in the master bedroom and an additional $23,362.00 in US currency in the master bedroom closet. Devonish does not dispute the forfeiture of his interest in those items.  *Id*. at 3.  DEA also seized the Hellcat, bearing VIN 2C3CDXL90LH148724, and $107,211.36 from Devonish's bank account with the Financial Center First Credit Union.  *Id*. at 4.  Devonish disputes that these two items are subject to forfeiture.

Special Agent Eric Sills ("Agent Sills") with the Internal Revenue Service ("IRS") conducted a financial investigation of Devonish and performed a net worth analysis.[1]  In his experience as an IRS agent working with the DEA, Agent Sills notes that people typically pay for drugs in cash.  Agent Sills obtained statements from Devonish's Financial Center First Credit

---

[1] Agent Sills testified a "net worth analysis" attempts to determine whether an individual's personal expenditures are supported by legitimate income, using known sources of legitimate income, and comparing those with the money that was spent by the person during the given time period.

Union checking and savings account for January 2020 through June 30, 2022, as well as supporting documents for the transactions, such as deposit tickets. The starting balance of the account in January 2020 was approximately $80,000.00. From January 9, 2020 through June 30, 2022, Devonish made regular cash deposits totaling $167,709.00 into the Financial Center First Credit Union account. (Hrg. Exhibit 26.) The expenses debited from the account totaled approximately $199,000.00. *Id*. The expenses were for personal-type expenses such as rent, Ubers, gas, hotels, food, and a monthly loan payment to PNC Bank.

There is no IRS record of Devonish filing federal income tax returns for tax years 2018, 2019, 2021. (Hrg. Exhibit 27.) Devonish filed a federal income tax return for tax year 2020 and claimed $50,100.00 in wages or salary but failed to attach his W-2 form as required. (Hrg. Exhibit 28.) The IRS database records show that Devonish had a business interest in Back and Forth Hauling, LLC and he reported a loss of $18,403.00 in tax year 2019. (Hrg. Exhibit 29.) Devonish reported that Back and Forth Hauling had a loss of $9,297.00 in tax year 2020 and Devonish received unemployment benefits of $17,811.00 in 2020. *Id*. Devonish reported that Back and Forth Hauling had income of $4,893.00 in tax year 2021 and Devonish received unemployment benefits of $11,225.00 in 2021. *Id*.

Devonish's rent for the Gann Road apartment was approximately $1,175.00 per month beginning July 2017. (Hrg. Exhibit 30.) On March 21, 2020, Devonish purchased the Hellcat for $83,305.00, but with taxes and other goods and services—such as tire and wheel enhancements—the total purchase price was $98,017.66. (Hrg. Exhibits 31 and 32.) Devonish made an initial cash down payment of $9,500.00 and financed the balance due of $81,447.66. Beginning in approximately April 2020 until the time of Devenish's arrest in June 2022, there were regular withdrawals of $2,000.00—which totaled approximately $44,000.00—from the Financial Center

First Credit Union account paid to PNC Bank for the Hellcat. (Hg. Exhibit 26.) Indiana Workforce Development records show that Devonish became unemployed on March 15, 2020 (due to the COVID-19 pandemic), six days before he purchased the Hellcat. On his unemployment application, Devonish identified his employment as Back and Forth Hauling LLC. (Hrg. Exhibit 33.)

In CCTV and wiretap communications, Devonish discussed with Jones that he was getting drugs from Jones during the pandemic. (Hrg. Exhibit 25.) Devonish and Jones engaged in a FaceTime video conversation on May 2, 2021, (Hrg. Exhibit 34), and during their surveillance, DEA agents observed Devonish and Jones together in April 2022.

## II.  DISCUSSION AND CONCLUSIONS OF LAW

Federal law provides that any person convicted of a violation of the Controlled Substances Act shall forfeit any property constituting, or derived from, any proceeds that the person obtained, directly or indirectly, from the violation. 21 U.S.C. § 853(a).

> There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—
>
> (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and
>
> (2) there was no likely source for such property other than the violation of this subchapter or subchapter II.

21 U.S.C. § 853(d). Upon entry of a Preliminary Order of Forfeiture, the Government, pursuant to 21 U.S.C. § 853(n), will post notice of its intent to dispose of the subject property, and will provide notice directly to any third parties known to have alleged an interest in the property.

The Government bears the burden of proving its entitlement to forfeiture by a preponderance of the evidence. *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005); *United*

6

*States v. Del Guidice*, 594 F. Supp. 3d 998, 1002 (N.D. Ill. 2022). "In order to meet its burden, the Government must establish a nexus between the property seeking to be forfeited and the offense." *Del Guidice*, 594 F. Supp. 3d at 1002. Proving such a nexus requires the Government to establish "that the property sought to be forfeited bears more than an incidental or fortuitous connection to the criminal activity." *Id*. Calculating the correct criminal forfeiture is a "highly fact-specific" matter. *Id*. The Government does not need to trace the specific assets that it seeks to forfeit to specific drug transactions. *United States v. Nelson*, 851 F.2d 976, 980 (7th Cir. 1988). Instead, the Government may rely upon the "net worth theory." *Id*. The net worth theory compares legitimate income to expenditures and, in the absence of any explanation by the defendant, which is reasonably susceptible of being checked, presumes that excess expenditures are from illegitimate sources. *Id*. Where a defendant has assets or expenditures that are not supported by the defendant's legitimate income, a presumption arises that the excess assets or expenditures came from illegitimate sources. *Id*. Put another way, net worth analysis allows the government to establish the right to forfeit assets without presenting direct evidence of the specific source of money for a specific asset or expenditure; instead, proof of a likely source becomes sufficient. *Id*. at 981 (citations omitted).

Forfeiture is a mandatory part of a defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 41, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). As soon as practicable after a plea of guilty, the court shall determine what property is subject to forfeiture and promptly enter a preliminary order of forfeiture directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Fed. R. Crim. P. 32.2(b)(1), (b)(2).

The Government argues the money contained in Devonish's Financial Center First Credit Union account and the money used to purchase the Hellcat are not supported by legitimate sources, as revealed by his federal income tax records from 2018 through 2021. Thus, these assets presumptively arose from Devonish's drug trafficking activity and the net worth theory allows for a forfeiture of the assets.

Devonish presented no evidence at the evidentiary hearing. Instead, his counsel proffered that Devonish was employed as an over-the-road truck driver before any involvement in the conspiracy and that he maintained his employment while he was part of the conspiracy. Counsel proffered that Devonish and his partner were planning to purchase a house shortly before his arrest and the funds in his bank account represent money saved for that purpose.

Devonish argues that in August 2020, he had $95,943.00 in his bank account so those funds would not be subject to forfeiture because the overt acts charged in the Superseding Indictment began in 2022. He contends the funds seized from his bank account in 2022 represent savings from his employment and were not derived from proceeds of any offense. He argues there are other sources of income other than wages, such as gifts and inheritances. He contends the Hellcat was not purchased with the proceeds of his involvement in the conspiracy, and there is no evidence of him depositing drug proceeds into a bank account or using those proceeds to purchase the Hellcat.

The Court is not persuaded by Devonish's argument, and the evidence presented does not support his contentions. Instead, the evidence presented shows that Devonish earned approximately $30,000.00 or less of legitimate income from unemployment compensation during the course of the conspiracy. The Government presented detailed tracing analysis conducted by IRS Special Agent Sills who testified concerning his net worth analysis. Agent Sills discovered

8

there are no W-2s, 1099s, cancelled checks or other forms to verify legitimate income from Devonish's business, Back and Forth Hauling. The evidence relative to Back and Forth Hauling shows losses that the corporation ensued and passed forth through to Devonish. There is no income that was reported to him from his business in the relevant tax years.

In his 2020 sworn application for unemployment compensation, Devonish reported a loss of income or modest gain but presented no W-2 or a form 1099 to the IRS to show a legitimate source of income. Devonish failed to file income tax returns for tax years 2018, 2019 and 2021. He did file a return for tax year 2020, and the Government argues he did so "probably just to get COVID stimulus money." We see no evidence of any legitimate income in those tax returns. In tax years 2020, 2021, and 2022, there is no evidence of legitimate income other than approximately $30,000.00 in unemployment payments. The evidence shows that Devonish's monthly expenses for rent (approximately $1,175.00), utilities, car payment ($2,000.00) and other needs, are significantly greater than the reported income.

There is no evidence before the Court that Devonish's cash deposits from 2020 through 2022 were derived from gifts or inheritance. Rather, it is undisputed that Devonish knowingly or intentionally conspired together with Jones and other persons, to distribute controlled substances in the Southern District of Indiana from on or about September 2020 until his arrest in June 2022. (Filing No. 503.) Devonish is responsible for at least 90,000 kilograms of converted drug weight for fentanyl, cocaine, and actual methamphetamine. (Filing No. 846 at 8-9.) The evidence shows that Devonish discussed having obtained drugs from Jones during the COVID-19 pandemic-- which began in late 2019 and resulted in a nationwide shutdown beginning in March 2020. From January 2020 through June 2022, Devonish made $167,709.00 in cash deposits into the Financial Center First Credit Union account. Those cash deposits were made in increments ranging from

$500.00, $1,000.00, and $3,000.00, up to $7,000.00 per transaction. Cash deposits were made from a few to many times per month. Agent Sills presented credible expert testimony that illegal drug transactions are commonly made in cash rather than by checks. The deposit of large sums of cash in varying amounts is consistent with cash proceeds collected from drug dealing—and Devonish was a drug dealer. Moreover, there is no evidence or explanation for Devonish's cash deposits into the Financial Center First Credit Union account other than drug trafficking activity. There is overwhelming credible evidence that the funds are from illegitimate sources.

Even assuming the $80,000.00 in the account before 2020 was from legitimate sources, over $199,000.00 was withdrawn from the account for expenditures which would consume any legitimately acquired funds. There is no credible evidence before the Court to show that the seized funds in the Financial Center First Credit Union account are from any legitimate sources. The Government has established by a preponderance of both direct and circumstantial evidence that the $107,000.00 in the Financial Center First Credit Union account is subject to forfeiture.

With respect to the Hellcat, the $9,500.00 down payment was made March 2020, prior to commencement of the charged drug conspiracy. Acknowledging that the starting balance of the Financial Center First Credit Union account in January 2020 was approximately $80,000.00, the Court determines that Devonish's interest in the Hellcat is not subject to forfeiture.

### III.   CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that the Government has shown by a preponderance of the evidence that the $107,000.00 in the Financial Center First Credit Union account is subject to forfeiture.

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** Defendant's Request to Modify Forfeiture (Filing No. 979). The Motion is **granted** in that the

preliminary order of forfeiture shall exclude forfeiture of Devonish's interest in the Hellcat.  The

Motion is **denied** in that the following items remain subject to forfeiture:

> 1) one .357 caliber Taurus revolver, bearing serial number ABL140169, seized from 12351 Gann Court in Indianapolis on July 21, 2022; (2) one 9 millimeter SCCY CPX-2 firearm, bearing serial number 724294, seized from 12351 Gann Court on July 21, 2022; (3) one American Defense Model UIC 5.56 Assault Rifle, no serial number listed, seized from 12351 Gann Court on July 21, 2022; (4) one 5.7 x 28 millimeter Ruger Model 57 firearm, bearing serial number 641-28945, seized from 12351 Gann Court on July 21, 2022; (5) one 12 gauge Maverick Arms Model 88 shotgun, bearing serial number MV14835A, seized from 12351 Gann Court on July 21, 2022; (6) $51,046.92 in currency, seized from 12351 Gann Court on July 21, 2022; (7) one .38 caliber Smith & Wesson handgun, bearing serial number C160697, seized from 5543 East 41st Street in Indianapolis on July 21, 2022; (8) one .40 caliber Springfield Armory Model XD Mod2, bearing serial number GM138900, seized from 5543 East 41st Street in Indianapolis on July 21, 2022; and (9) any and all ammunition seized from 12351 Gann Court and 5543 East 41st Street on July 21, 2022; and (10) $107,211.36 seized from Financial Center First Credit Union Checking and Savings Account #441531.

**SO ORDERED.**

Date:  2/28/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Valerie C. Horvath
CAMDEN & MERIDEW, P.C.
vhcamlawyers.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov